RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0182p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

KATHLEEN A. MCCARTHY,

   *Plaintiff-Appellant/Cross-Appellee,*

  *v.*

AMERITECH PUBLISHING, INC., dba AT&T Advertising Solutions and AT&T Advertising & Publishing, Inc.;  AT&T INC.;

   *Defendants-Appellees/Cross-Appellants.*

Nos. 13-3295/3331

Appeal from the United States District Court
for the Southern District of Ohio at Dayton
No. 3:10-cv-00319—Thomas M. Rose, District Judge.

Argued:  March 20, 2014

Decided and Filed:  August 13, 2014

Before:  BOGGS, SILER, and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Kirstie N. Young, BIESER, GREER & LANDIS, LLP, Dayton, Ohio, for Appellant/Cross-Appellee.  Terrence J. Miglio, KELLER THOMA, P.C., Detroit, Michigan, for Appellees/Cross-Appellants.  **ON BRIEF:**  Kirstie N. Young, David C. Greer, BIESER, GREER & LANDIS, LLP, Dayton, Ohio, for Appellant/Cross-Appellee.  Terrence J. Miglio, Barbara E. Buchanan, KELLER THOMA, P.C., Detroit, Michigan, for Appellees/Cross-Appellants.

_____

## OPINION

_____

  JULIA SMITH GIBBONS, Circuit Judge.  Kathleen McCarthy filed suit against Ameritech Publishing, Inc. (API) and AT&T, her former employers, to recover damages for

claims related to the August 2008 termination of her employment. The merits of those claims are the subject of a separate appeal. This appeal concerns a litigation dispute that arose during the course of that case. McCarthy submitted several requests for admission (RFAs) to API, but API refused to admit the veracity of the disputed facts. More than a year later, however, API turned over to McCarthy an email establishing that one of the disputed facts was, in fact, true. McCarthy moved for sanctions under Federal Rule of Civil Procedure 37(c)(2), and the district court granted the request, awarding McCarthy $15,313.11—a fraction of what she sought. McCarthy appeals the amount of the award and seeks to collect the fees and expenses she incurred to prepare and present the sanctions motion. API cross-appeals the propriety of the sanctions. We affirm in part and reverse in part.

## I.

The facts of this case are more comprehensively set forth in the companion appeal that addresses the merits of McCarthy's claims (No. 12-4510). In this appeal, a truncated version will suffice.

API, a wholly owned subsidiary of AT&T, implemented a force reduction in its Dayton, Ohio, office in July 2008. API managers informed McCarthy that her position at the company would be terminated the following month. API provided McCarthy with two options. First, she could retire in August 2008 and receive a lump-sum termination payment. If she selected this option, she was allegedly told that she would not receive certain retirement benefits. In the alternative, McCarthy could opt into AT&T's Employment Opportunity Pool and continue to receive healthcare benefits and a reduced wage until she reached the age of sixty-five in May 2009, when she could retire with full benefits. McCarthy chose the latter option.

In August 2010 McCarthy sued API in federal district court, alleging numerous claims related to the termination of her position. About four months later McCarthy served API with multiple RFAs, including RFA No. 10: "Admit that the Plaintiff would have been eligible to receive retirement health benefits if her employment had terminated in August, 2008." API denied RFA No. 10 in January 2011. McCarthy and her counsel pressed further and explored this issue throughout the litigation, and API continued to deny McCarthy's eligibility. But API

did turn over a pension-plan document showing that AT&T was the plan administrator, and in July 2011 McCarthy amended her complaint to add AT&T as a defendant.

Then, suddenly, counsel for the defendants acknowledged in a May 2012 email that McCarthy was eligible to receive post-retirement medical benefits as of the date on which she entered the Employment Opportunity Pool. The defendants provided McCarthy with an August 2008 email from Tami Honda, a senior human resources manager at AT&T, to API managers Dwight Cameron and David Zawisa. In the email, Honda wrote that someone at Hewitt, API's health and welfare benefits vendor, had determined that McCarthy was eligible for retirement healthcare benefits in August 2008 under a "grandfather rule" applicable to former employees of LM Berry, a company that API had acquired.

McCarthy immediately moved for sanctions under Federal Rule of Civil Procedure 37(c)(2). She argued that API had failed to provide accurate answers to six separate RFAs, including RFA No. 10. In a July 2012 opinion, the district court granted in part and denied in part McCarthy's motion, concluding that both defendants should be sanctioned for their inaccurate response to RFA No. 10 but that their responses to the other RFAs did not warrant sanctions.[1] The court allowed McCarthy thirty days to move for attorney's fees and expenses related to the sanctions, and McCarthy timely submitted her request the following month.

In late November and early December 2012, after awarding summary judgment to the defendants on the merits of each of McCarthy's claims, the district court held three days of hearings to address McCarthy's motion for attorney's fees. On February 7, 2013, the court awarded McCarthy $15,313.11 in fees and expenses—a fraction of the $153,688.39 she requested. The court first concluded that Rule 37(c)(2) did not permit McCarthy to recover fees and expenses related to the preparation of her fee application. The court then examined McCarthy's billing records and calculated the lodestar amount. The parties timely appealed.

---

[1]The district court imposed the sanctions on both API and AT&T. The defendants later filed a motion for reconsideration, and in August 2012 the district court relieved AT&T of liability for the sanctions because AT&T was not a party to the suit at the time of the relevant transgressions. McCarthy does not appeal that order.

**II.**

"A district court's decision to invoke Rule 37 sanctions is reviewed by this court for an abuse of discretion." *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994) (internal citations omitted). "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Id.*

**III.**

Although API does not appeal the district court's July 2012 decision granting McCarthy's motion for sanctions, API nevertheless challenges the propriety of those sanctions in its brief. McCarthy defends the district court's decision to award sanctions but protests the amount of the award. Both API and McCarthy claim that the issues raised by their adversaries are not properly before this court. We will address those arguments in turn.

**A.**

API contends that the award of sanctions was improper for two reasons. API first maintains that McCarthy is not entitled to sanctions under Rule 37(c)(2) because she did not "make the proof." Federal Rule of Civil Procedure 36(a)(1) provides that a party may serve on any other party a request to admit the truth of any discoverable fact. Rule 37(c)(2) is the enforcement mechanism for Rule 36: "If a party fails to admit what is requested under Rule 36 and if the requesting party later proves . . . the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof." API argues that McCarthy did not "make the proof" because API, not McCarthy, ultimately established McCarthy's eligibility for post-retirement healthcare benefits when API provided McCarthy's counsel with the relevant email in May 2012.

District courts ordinarily impose Rule 37(c)(2) sanctions when one party refuses to admit a fact and the other party is compelled to prove the truth of that fact to the jury. In those circumstances the party that requested the admission is entitled to recover the fees and costs it incurred to "make that proof." But nothing in the language of the rule prevents a party from obtaining sanctions when an opposing party initially refuses to admit a fact but later concedes its

truth.  *See Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 812 F. Supp. 966, 988 (D. Neb. 1993) ("While a party may reduce its exposure for fees and expenses by making an appropriate concession in the pretrial order, such a concession will not provide the party with a safe harbor for the prior ill-advised denial where the adverse party has spent time and money to prove the fact denied.").

McCarthy established her August 2008 eligibility for post-retirement healthcare benefits by subpoenaing records and deposing witnesses, and through that discovery she made the proof. In May 2012, about a year and a half after McCarthy requested the admission, API finally turned over an August 2008 email in which an AT&T human-resources manager told an API manager that McCarthy was entitled to post-retirement healthcare benefits.  LaRhonda Duncan, an API corporate designee, then confirmed the contents of the email, and McCarthy's August 2008 eligibility for post-retirement healthcare benefits, during a subsequent deposition.  It was the dogged efforts of McCarthy and her counsel to obtain information about McCarthy's eligibility that ultimately led to the disclosure of the August 2008 email.  Accordingly, we have no trouble concluding that McCarthy, not API, made the proof.

Second, API argues that the district court's sanctions award constituted an abuse of discretion because RFA No. 10 sought information that was of "no substantial importance" in this litigation.  Rule 37(c)(2) requires the district court to award reasonable fees and costs associated with a party's refusal to admit a fact unless, among other things, "the admission sought was of no substantial importance."  Fed. R. Civ. P. 37(c)(2)(B).  API contends that McCarthy's August 2008 eligibility for post-retirement healthcare benefits was of no substantial importance to the causes of action alleged in her original complaint.

That argument plainly lacks merit.  If McCarthy was eligible for post-retirement healthcare benefits in August 2008, API's representations to the contrary were false and misleading.  Those misleading representations allegedly led McCarthy to forgo retirement in August 2008 and instead opt into the Employment Opportunity Pool—a decision, it turns out, that led her to work for nine months with no added benefit.  The representations therefore go to the heart of her unjust-enrichment claim, which alleged that "AT&T has been unjustly enriched as a result of its improper and unlawful conduct in the approximate amount of $31,547.49, which

constitutes the value of McCarthy's services for the 1,443 hours she worked from August 15, 2008 until May 7, 2009."

API argues that McCarthy cannot prevail because neither the unjust-enrichment claim nor any other claim in McCarthy's original complaint survived summary judgment. But the importance of the disputed fact does not turn on whether the requesting party is later able to prove other, independent facts that relate to other elements of the claim. A fact is of substantial importance when it is "material to the disposition of the case," *SEC v. Happ*, 392 F.3d 12, 34 (1st Cir. 2004), meaning that it tends to prove or disprove one of the disputed elements of the claim, *see Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 351 (7th Cir. 2006); *Wash. State Dep't of Transp. v. Wash. Natural Gas Co.*, 59 F.3d 793, 806 (9th Cir. 1995). The importance of the disputed fact is assessed at the time the request for admission is made, not at the end of the case. An otherwise important fact does not become unimportant simply because the requesting party subsequently loses the claim on some other basis. McCarthy's unjust-enrichment claim ultimately failed because an express contract governed her employment relationship with API, but API's misrepresentations were nonetheless "material to the disposition" of that claim. Accordingly, McCarthy's eligibility for healthcare benefits was of substantial importance to the case, and the district court did not abuse its discretion when it awarded sanctions.

**B.**

McCarthy's appeal raises an issue of first impression. When a litigant expends resources to prove a fact that an opposing party refused to admit, Rule 37(c)(2) directs (and does not just permit) the court to award monetary sanctions equal to "the reasonable expenses, including attorney's fees, incurred in making that proof." Fed. R. Civ. P. 37(c)(2); *see also Hicklin Eng'g*, 439 F.3d at 351. The district court ordered API to compensate McCarthy for the fees and expenses that she incurred to make the proof that she was eligible for post-retirement medical benefits in August 2008. But the court did not award McCarthy any of the fees and expenses associated with the preparation and presentation of her fee application, concluding that they are not recoverable under Rule 37(c)(2). On appeal, McCarthy contends that she should recover the fees and expenses she incurred while preparing and presenting her Rule 37(c)(2) fee application.

The district court paired and contrasted Rule 37(c)(2) with Rule 37(c)(1), which provides that a party who fails to make a required disclosure under Rule 26(a) may be ordered to pay the fees and expenses "caused by the failure." The district court reasoned that whereas the costs of preparing and presenting a fee application are no doubt "caused by the failure" to make the required disclosure, the costs of the fee application are *not* "incurred in making the proof" of the unadmitted fact. The district court therefore concluded that the scope of the sanctions provided in Rule 37(c)(2) is more limited than the scope of other Rule 37 provisions that allow litigants to recover reasonable fees and expenses "caused by the failure" of an adversary to heed other discovery rules—*e.g.*, Rule 37(b)(2)(C), (c)(1)(A), (d)(3), and (f). In short, the district court read the plain language of Rule 37(c)(2) to direct recovery for costs incurred "in making the proof" but not costs involved in presenting a fee application because, strictly speaking, those costs are not incurred in proving the requested admission.

We acknowledge the textual discrepancy between Rule 37(c)(2) and the other Rule 37 provisions. But the district court's constricted interpretation is inconsistent with appellate decisions in two other circuits implicitly extending the scope of Rule 37(c)(2) to cover the cost of preparing a fee application. When *In re Stauffer Seeds, Inc.*, 817 F.2d 47 (8th Cir. 1987), reversed the district court's calculation of the fees recoverable under Rule 37(c)(2), the Eighth Circuit instructed that "[t]he magistrate's scrutiny on remand should extend also to hours reasonably spent by Booker's local counsel in seeking the discovery sanctions." *Id.* at 50. And in *Hicklin Engineering, L.C. v. Bartell*, the Seventh Circuit held that the court "acted properly," 439 F.3d at 351, when it awarded attorney's fees under Rule 37(c)(2) "for the time expended by the defendants in filing and briefing their motion for attorneys' fees," *Hicklin Engineering, L.C. v. Bartell*, No. 00-c-1516, 2005 WL 3805914, at *3 (E.D. Wis. Mar. 31, 2005).

The limitation imposed by the district court also creates an inexplicable anomaly between Rule 37(c)(2) and the other Rule 37 provisions. Why should the other provisions of Rule 37—subsections (b)(2)(C), (c)(1)(A), (d)(3), and (f)—permit recovery of fees and costs associated with preparing a fee application, as those costs are "caused by the failure" of an adversary to comply with the respective discovery requirement, while Rule 37(c)(2) should not? We discern no justification for such an anomaly. The violations set forth in subsections (d)(1)(A)(iii) and

(c)(1) of Rule 37, for example, are not inherently more egregious than a violation of Rule 37(c)(2); those subsections, like Rule 37(c)(2), impose sanctions on litigants who fail to provide information requested by their opponents. Indeed, a violation of Rule 37(c)(2) may be more contemptible, as it often involves a misleading discovery response rather than a mere failure to respond. In light of the overlapping purposes of the assorted provisions of Rule 37, it would be incongruous to interpret Rule 37(c)(2) to bar district courts from awarding reasonable fees and expenses associated with the preparation and presentation of fee applications.

Rule 36 further supports this result. If a party serves another party with a request for admission under Rule 36(a)(1), and the requesting party is dissatisfied with the sufficiency of the answer, the requesting party may ask the court to intervene. Fed. R. Civ. P. 36(a)(6). If the court intervenes on behalf of the requesting party, Rule 36(a)(6) permits the court to award any fees and expenses available under Rule 37(a)(5)—including fees and expenses "incurred in making the motion." Once again, we can discern no rationale for permitting the district court to award these fees and expenses when a party provides an insufficient answer to a request for admission but not when the party unreasonably denies the request for admission. An improper denial causes no less damage than an evasive answer, and the Federal Rules of Civil Procedure deter both with comparable force. In both instances, adequate deterrence is enhanced if the district court is able to charge noncompliant or evasive litigants for the costs of the fee application—an application directly attributable to their own conduct. *See* 7 *Moore's Federal Practice* § 37.70 (3d ed. 2013) (stating that an "important purpose" of the expense-shifting sanction codified in Rule 37(c)(2) is to establish incentives for litigants "to respond reasonably and in good faith to appropriate requests for admissions").

To harmonize Rule 37(c)(2) with other Rule 37 provisions serving a substantially similar purpose, we interpret the scope of Rule 37(c)(2) to encompass reasonable attorney's fees and costs associated with the preparation and presentation of the fee application. Because Rule 37(c)(2) requires rather than merely permits the district court to make the award, the district court's discretion is circumscribed. Only fees and costs that the court determines to be unreasonable may be withheld.

McCarthy also challenges the district court's denial of her request for fees incurred after May 12, 2012, when API supposedly offered to stipulate to her August 2008 eligibility for post-retirement healthcare benefits. But McCarthy did not preserve this argument because she did not include it in her statement of the issues presented for review, as mandated by Federal Rule of Appellate Procedure 28(a)(5). *See Barrett v. Detroit Heading, LLC*, 311 F. App'x 779, 796 (6th Cir. 2009) (citing *United States v. Baylor*, 517 F.3d 899, 903 (6th Cir. 2008); *United States v. Ballard*, 280 F. App'x 468, 471 n.1 (6th Cir. 2008)). McCarthy's statement of the issues presented asks whether she is entitled to recover "the cost of presenting Rule 37(c)(2) motions." Her argument section likewise identifies only one issue: "McCarthy Should Recover the Cost of Preparing and Presenting Her Fee Application Under Rule 37(c)(2)." Neither of these statements encompasses whether McCarthy is entitled to recover fees incurred after API privately acknowledged her eligibility for post-retirement healthcare benefits. That issue was not properly raised, and McCarthy therefore forfeited that aspect of her appeal.

## IV.

For these reasons, the decision of the district court is affirmed in part and reversed in part. The case is remanded to the district court with instructions to recalculate the amount of attorney's fees and expenses to which McCarthy is entitled under Rule 37(c)(2).